UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
KAREN BARRETT,                                             Civ. Act. No.: 10-CV-4600 (AKH)

                Plaintiff,

    -against-                                           **DEFENDANT'S COUNTER
                                                           STATEMENT TO PLAINTIFF'S**
HARTFORD LIFE AND ACCIDENT                                 **RULE 56.1 STATEMENT**
INSURANCE COMPANY,
                                                           DOCUMENT
                Defendant.               ELECTRONICALLY FILED
----------------------------------------------------------X

        Pursuant to Rule 56.1 of the Local Civil Rules For The Southern And Eastern Districts of New York, Defendant Hartford Life Insurance Company incorrectly sued herein as Hartford Life And Accident Insurance Company ("Hartford"), by and through its attorneys, Sedgwick LLP, submit this Counter Statement to Plaintiff's Rule 56.1 Statement dated March 29, 2011, Doc. No. 20, as follows:

## PRELIMINARY STATEMENT

        Hartford states that it has filed its Rule 56.1 Statement of Material Facts dated March 23, 2011, in support of its own motion for summary judgment. Rather than restating those statements herein, Hartford respectfully refers this Court to Defendant's Rule 56.1 Statement for supplemental facts asserted in opposition to Plaintiff's motion.

## PRELIMINARY OBJECTIONS

        1.     Hartford objects to each and every Statement to the extent that Plaintiff has failed to include citations to record evidence that would be admissible as set forth in Rule 56(e), FED. R. CIV. PROC.

        2.     Hartford objects to each and every Statement that references evidence that was not identified in Plaintiff's Rule 26(a) Disclosure, or otherwise, produced in discovery.

        3.     Hartford objects to each and every Statement to the extent that it references hearsay evidence not attached to a sworn declaration or affidavit made on personal knowledge.

4.      Hartford objects to each and every Statement to the extent it relies on information or evidence outside the administrative record to prove Plaintiff's alleged entitlement to benefits.

5.      Hartford objects to each and every Statement to the extent that it treats issues of law as issues of fact.

6.      Hartford objects to each and every Statement to the extent that it references "facts" that are not material to the pending motion for summary judgment.

7.      Hartford objects to each and every Statement to the extent it is not a short and concise statement.

**RESPONSES**

1.      Denies, except admits that Plaintiff Karen Barrett ("Barrett") was employed as the Director of Business Development/Executive Producer for Moving Images ("MI"), a subsidiary of Greystone & Co., Inc. ("Greystone") from August 2007 to April 6, 2009.  (478). [1]

2.      Admits.

3.      Admits.

4.      Denies, except admits that volatile organic compounds ("VOCs") were not found to be above normal limits at MI's location.  (219, 239-50, 227-35, 318, 423, 480).

5.      Denies, except admits Dr. Teich states in his letter dated September 3, 2009 that he first saw Barrett on August 15, 2007 "with complaints of heart palpitations, tightness and cramping in her chest, headaches, burning and redness in her eyes, lip and hand swelling, dizziness and a rash on her upper body."  (285).

---

[1] The numbers in parentheses refer to the Bates Stamped pages starting with the prefix "BARRETT 000__," which are annexed to the Declaration of Deanie Wallis, dated March 22, 2011, Doc. No. 13, ("Wallis Dec."), as Exhibits "A" through "B."

6. Denies, except admits that according to Dr. Teich's letter, dated September 3, 2009, Dr. Teich accepted Barrett's complaints were associated with the exposure to chemicals in the air coming from a printing company in the same building. (285).

7. Denies, except admits that Microecologies, Inc.'s Preliminary Inspection Report, dated November 11, 2008, noted that the VOCs in the air were within normal limits, the Pure Solutions Project Survey, dated February 25, 2008, noted that the VOCs were determined to be of an acceptable range and the Pure Solutions Project Survey, dated November 2, 2004, noted that the measurable concentrations of VOCs present within the facility were in low levels. (227-35, 239, 261).

8. Denies, except admits that Notice of Violation from Department of Health was issued on October 21, 2008, to Ted O'Brien, the owner of 827 East 45th Street, Sixth Floor, due to noxious fumes such as "waxy odors" associated with a laminating process and an apparent problem with its HVAC system. Hartford also admits that the Notice reflects that U.S. Occupational Safety Health Administration ("OSHA") did its own air testing but that there was no cause for action. (236-37).

9. Denies, except admits that Barrett claimed to have changed her office location several times and to have purchased several air filters. (215).

10. Denies, except admits that Barrett claimed to work from home whenever possible and claimed to experience more frequent symptoms by December 2008. (218).

11. Denies, except admits that Eric Bertrand, Barrett's supervisor, stated he had authorized Barrett to work from home "since her primary function was making calls to new prospects." (463). Additionally, Hartford admits that Dr. Teich stated in a letter dated April 15, 2009 that Barrett needed to undergo desensitization, and stated in a letter dated January 2, 2008, that Barrett should be permitted to work outside of her office setting. (287-88).

12. Denies, except admits that Mr. Bertrand stated in a letter dated June 30, 2009, after he was no longer employed by Greystone, that Barrett's position at MI required her to have "constant

hands-on interaction with Locomotive [MI's in-house client] and the MI Post staff and management team." (450).

    13.    Denies. (452-60).

    14.    Admits.

    15.    Denies, except admits that by letter dated July 10, 2009 (and faxed on July 14), Barrett's counsel, Scott Riemer, submitted Barrett's completed Application For LTD Benefits. (074, 470-82).

    16.    Denies, except admits that Hartford noted that it had received a completed Attending Physician Statement ("APS") from Dr. Lax on July 27, 2009, which was faxed from Attorney Riemer's office on July 24, 2009. (108, 402-03)

    17.    Denies, except states that Dr. Lax is affiliated with Occupational Health Clinical Center. (0318-19).

    18.    Denies, except admits that in his narrative report dated April 7, 2009, Dr. Lax reported that Barrett claimed that at some point after August 2007 and before October 2008 she complained of chemical taste in the mouth, throat closing, trouble breathing, lips swelling, and feelings of being "drugged up." (318).

    19.    Denies, except admits that in his narrative report dated April 7, 2009, Dr. Lax reported that Barrett claimed that she reported experiencing side effects to the medications that were prescribed to her, he diagnosed Barrett with multiple chemical sensitivities, and he stated that treatment was discussed with Barrett and would include avoidance of materials and environments known to exacerbate her symptoms. (318-19).

    20.    Denies, except admits that Barrett quoted from a portion of Dr. Lax's narrative report dated April 7, 2009. (319).

4

21. Denies, except admits that Hartford advised Attorney Riemer that it had denied Barrett's claim for LTD benefits because Barrett was paid her full salary through the time MI was sold and her coverage ended April 7, 2009. (088-91).

22. Denies, except admits that Hartford advised Attorney Riemer that in making its determination to deny Barrett's claim for LTD benefits, it considered all evidence in Barrett's claim file and that the LTD policy states that the claimant must be disabled throughout and beyond the policy's Elimination Period and refer to the letter dated April 7, 2009 for its contents. (201-04).

23. Denies, except admits that Jody E. McClanahan, Director of Human Resources at Greystone, stated that as of March 27, 2009, she "was advised by [MI's] office manager, Ms. Naomi Blecker, that [Barrett] was still actively at work (from her office) and making sales calls" and that Greystone "paid Ms. Barrett in full through April 6, 2009." (90). Further, Hartford admits that it received attendance records from Greystone reflecting that Barrett had been "in" and working for MI every day from February 6, 2009 through April 3, 2009 (a Friday), with the exception of two personal days on February 10 and 18, 2009. (452-60). Additionally, Hartford admits that it received a completed Employer Statement from Jody McClanahan dated July 9, 2009, which stated that Barrett's position at MI was "Sales Executive;" that she "could work from home" in that position; and that Greystone's records reflect that she did *not* stop work as of April 7, 2009. (448). Hartford also admits that Ms. McClanahan stated in an email dated July 20, 2009, that Barrett received her full salary through the date that her employment with Greystone ended upon the sale of MI. (446).

24. Denies, except admits that Barrett quoted from a portion of the letter dated July 29, 2009, sent by attorney Riemer, counsel for Barrett, to Hartford. (381-82).

25. Denies, except admits that on August 25, 2009, Hartford mailed a copy of the claims file to Attorney Reimer. (106).

26. Admits.

5

27.     Denies, except admits that Barrett quoted from a portion of the letter dated January 13, 2010 that was sent by Attorney Riemer. (181).

28.     Denies, except admits that in a letter dated August 11, 2009, Barrett's supervisor, Eric Bertrand (who was no longer employed by Greystone at this time), retracted his initial statements and claimed that Barrett was not working from any location, including her home between March 17, 2009 and April 4, 2009. (209, 450-51). Hartford further admits that on that same day, Ms. Blecker, who when working for Greystone as an employee had previously certified that Barrett was present in the office up to April 6, 2009, also recanted her prior certification, stating that she marked Barrett as being "present" at the office, but did so only to make sure that Barrett would receive "Greystone's private, full-pay, short-term disability." (212, 464).

29.     Denies. (450-51, 464).

30.     Denies, except admits that Barrett saw several physicians prior to and after the purported first date of her disability on March 18, 2009. (268-70, 272-80, 283-288, 289-302, 316-319, 320-371, 372-376).

31.     Denies, except admits that the medical records provided by Barrett's treating doctors merely state her subjective complaints and fail to point to any objective testing to support a finding that Barrett actually has Multiple Chemical Sensitivity ("MCS") and Reactive Airway Disease ("RAD"). (268-70, 272-80, 283-288, 289-302, 316-319, 320-371, 372-376).

32.     Denies, except admits that Barrett claimed that Dr. Aboaba Afilaka was the first doctor she consulted with when she allegedly began having physical reactions to her work environment in 2005. (175, 271).

33.     Denies, except admits that on January 3, 2005, Barrett presented to Dr. Afilaka with complaints of chest tightness, palpitations, "metallic" taste, throat irritation and hoarseness, and lesions along the upper gum. (281).

34.     Denies, except admits that on March 21, 2005, Barrett presented to Dr. Afilaka with complaints of short of breath, chest tightness and palpitations. Dr. Afilaka diagnosed solvent induced RAD and rhino sinusitis. (280). Hartford further admits that on October 24, 2007, Barrett presented to Dr. Afilaka with complaints of short of breath, chest tightness and fatigue (276), and that Dr. Afilaka noted that Barrett uses special chemical filters in her office. (277).

35.     Denies, except admits that Dr. Afilaka's office notes dated January 14, 2009 reflect Barrett's complaints of feeling palpitations soon after shopping in the detergent aisle or perfume aisle at shopping marts. (272). Hartford also admits that Dr. Afilaka diagnosed Barrett on January 14, 2009 with RAD. (273).

36.     Denies, except admits that Dr. Afilaka's report notes Barrett's complaints, which she claims were caused by exposure to VOCs. (268).

37.     Denies, except admits that Barrett quoted from a portion of Dr. Afilaka's office notes, dated September 9, 2009. (268).

38.     Denies, except admits that Barrett first saw Dr. Morton Teich on August 15, 2007 with complaints associated with her work environment. (288).

39.     Denies, except admits that Dr. Teich has treated Barrett on several occasions. Hartford also admits that Barrett quoted from a portion of Dr. Teich's letter, dated January 2, 2008, to Eric Bertrand at MI. (288).

40.     Denies, except admits that Barrett quoted from a portion of Dr. Teich's letter, dated April 15, 2009, to Greystone Financial/MI. (287).

39.     Denies, except admits that Barrett quoted from a portion of Dr. Teich's letter, dated September 3, 2009. (285).

7

40. Denies, except admits that Barrett visited Dr. Sprouse's office for the first time on May 28, 2009. Hartford also admits that Dr. Sprouse served at the time as a Medical Director of Manhattan Health Consultants. (179).

41. Denies, except admits that Barrett quoted from a portion of Dr. Sprouse's report, dated August 20, 2009. (322).

42. Denies, except admits that Barrett quoted from a portion of Dr. Sprouse's report, dated August 20, 2009. (322).

43. Denies, except admits that Barrett's sole visit to Dr. Grace Ziem's office took place on August 25, 2009. (291-95).

44. Denies, except admits that Barrett quoted from a portion of Dr. Ziem's report, dated August 25, 2009. (295).

45. Denies, except admits that Barrett quoted from a portion of Dr. Ziem's report, dated August 25, 2009. (294).

46. Denies, except admits that by letter dated March 12, 2010, Ms. Wallis advised Attorney Riemer that Hartford had decided to uphold its initial determination denying Barrett's claim for LTD benefits and stated that "the overall evidence establishes that Ms. Barrett is capable of working without symptoms in other work environments." (078-82).

47. Denies, except admits that as part of its appeal review, Hartford asked University Disability Consortium ("UDC") to coordinate independent medical specialist reviews to clarify Barrett's condition and functionality. Hartford further admits that the reviews were performed by Dr. Philip Adamo, board certified in IM and Occupational Medicine and Dr. Ira Krefting, board certified in Pulmonary Medicine. (079).

48. Denies, except admits that Dr. Adamo is board certified in Internal Medicine and Occupational Medicine and was a Fellow of the American College of Occupational and Environmental Medicine, which is the same specialty as Barrett's own treating physicians. (152, 154, 521).

49. Denies, except admits that Dr. Adamo analyzed each of Barrett's own physician's notes and reports in addition to any other possible evidence lending support to Barrett's claim (144-153) and stated in his report that, "[t]here are peer reviewed resources on idiopathic environmental intolerances (multiple chemical sensitivity) that I often refer to when reviewing a case with this diagnosis." (152).

50. Objects on the grounds that this Statement fails to cite to any admissible evidence. To the extent any response is required, Hartford denies the Statement. (151-153).

51. Denies, except admits that Barrett quoted from a portion of Dr. Adamo's report, dated March 5, 2010. (152).

52. Denies, except admits that Dr. Adamo's report quoted from a recent article titled, "Multiple Chemical Sensitivity: A Spurious Diagnosis," that stated that most people who are diagnosed with MCS "have a psychosomatic disorder in which they develop multiple symptoms in response to stress." (153).

53. Denies, except admits that Dr. Krefting mentioned to Dr. Adamo that RAD is not accepted by all mainstream pulmonologists. (150).

54. Denies, except admits that Dr. Adamo tried to contact Dr. Afilaka over three days using the phone number identified on Dr. Afilaka's letterhead. (149, 268).

55. Denies, except admits that Dr. Adamo spoke with Dr. Lax on February 19, 2010, and Dr. Lax stated that "[h]e is not sure if [Barrett] has had any symptoms related to exposures," that "[i]t is his opinion that she had multiple chemical sensitivity," and that "[h]e does recommend that individuals with this diagnosis get psychological testing to improve their prognosis." (150).

56. Denies, except admits that Dr. Adamo stated in his report, dated March 5, 2010, that "there is a paucity of observable findings on exam and diagnostic testing to support the diagnoses of multiple chemical sensitivity or reactive airways dysfunction syndrome." (151).

57. Denies, except admits that Dr. Krefting reviewed Barrett's medical records that were submitted with the appeal from a pulmonary medicine viewpoint, especially as RAD is a pulmonary impairment. (154-58).

58. Denies, except admits that Dr. Adamo reported that Dr. Krefting stated that RAD is not accepted by all mainstream pulmonologists. (150).

59. Denies, except admits that Dr. Krefting stated in his report, dated March 5, 2010, that "[t]he claimant has not had a methacholine challenge pulmonary test which can help diagnos[e] RADS; claimants with possible RADS are often told not to have this test which may cause worsening of symptoms. Nevertheless pulmonary function testing and possibly a methacholine challenge in a controlled hospital pulmonary lab would be informative." (157)

60. Denies, except admits that Barrett quoted from a portion of Hartford's letter dated March 12, 2010, which upheld its adverse benefits determination. (81).

61. Denies, except admits that Drs. Adamo and Krefting each reviewed and analyzed Barrett's own physician's notes and reports in addition to any other possible evidence lending support to Barrett's claim (144-58), and found that most of the symptoms are self-reported, no physician has observed the "entire symptom complex," the symptoms occur selectively, certain tests and results were not included in the records, Barrett has not undergone certain informative tests, and ultimately found that "there is a paucity of observable findings on exam and diagnostic testing to support the diagnoses of multiple chemical sensitivity or reactive airways dysfunction syndrome. There are also other diagnoses that could explain Ms. Barrett's symptoms." (151, 157).

10

62. Denies, except admits that Barrett submitted a statement admitting that she returned to working full-time in her position as a Sales Representative at MI from May 1, 2009 through at least November 9, 2009. (225-26, 481-82).

63. Denies, except admits that Mr. Bertrand stated in his letter dated June 30, 2009 that he hired Barrett in May 2009 as a Sales Representative for MI, which is a position that can be performed from home, and does not require her to be in the office. (211).

64. Denies, except admits that Barrett exhausted her administrative appeals. (138).

65. Objects on the grounds that this Statement fails to cite to any admissible evidence and is incomplete. To the extent any response is required, Hartford denies the Statement. (Declaration of Bruce Luddy dated March 21, 2011, Doc. No. 14 and Wallis Declaration).

66. Objects on the grounds that this Statement that it is not material or relevant and relies on evidence outside of the administrative record. Subject to and without waiving the foregoing objections, Hartford admits that in 2005, it retained UDC and UDC, in turn, retained independent physicians to perform 2,517 medical record reviews and in 2005, Hartford was billed $3,558,187 by UDC. Hartford further admits that in 2006, it retained UDC, and UDC in turn, retained independent physicians to perform 1,774 medical record reviews, and that in 2006, Hartford was billed $2,515,168 by UDC, and further admits that in 2007 Hartford retained UDC and UDC, in turn, retained independent physicians to perform 893 medical record reviews and in 2007 Hartford was billed $1,272,128 by UDC. Hartford further states that the number of claims involving medical record reviews referred to UDC in 2005, 2006 and 2007 represents only a small fraction of the overall claims received and/or administered by Hartford in those years. (Answer, ¶45).

67. Objects on the grounds that this Statement it is not material or relevant and relies on evidence outside of the administrative record. Subject to and without waiving the foregoing objections, Hartford admits that the number of referrals and amounts paid to UDC are as follows:

11

| Year | Number of Referrals | Amount Billed |
| --- | --- | --- |
| 2007 | 893 | $1,272,127.50 |
| 2008 | 847 | $1,235,995.00 |
| 2009 | 967 | $1,476,633.75 |

(Hartford's Interrogatory Response ¶ 7).

68. Objects on the grounds that this Statement is not material or relevant and that it relies on evidence outside of the administrative record. Hartford objects to the Statement on the grounds that it does not refer to any admissible evidence and is an inaccurate statement of law and not one of fact. Subject to and without waiving the foregoing objections, Hartford denies the Statement and refers the Court to cases in which courts have accepted independent medical record peer review consultants' reports, particularly UDC. See *Fortune* v. *Long Term Group Disability Plan for Employees of Keyspan Corp.*, 637 F. Supp. 2d 132, 143 (E.D.N.Y. 2009) *aff'd* No. 09-3882-CV, 2010 WL 3393758 (2d Cir. Aug. 30, 2010) (finding reports of independent medical record peer review consultants, who were referred by UDC, to be adequate and properly supported Hartford's adverse benefits determination); *Mugan* v. *Hartford Life Group Ins. Co.,* No. 09 cv 6711(NRB), 2011 WL 291851, *11 (S.D.N.Y. Jan. 20, 2011) ("[T] there is no evidence that Hartford harbored a case-specific bias. . . [W]e cannot conclude that the medical consultants harbored a bias simply because they were compensated by Hartford for their work in connection with this review and past reviews.").

69. Objects on the grounds that this Statement is not material or relevant and that it relies on evidence outside of the administrative record. Hartford objects to the Statement on the grounds that it does not refer to any admissible evidence and is an inaccurate statement of law and not one of fact. Subject to and without waiving the foregoing objections, Hartford denies the Statement and refers the Court to cases in which courts have accepted independent medical record peer review consultants' reports, particularly UDC. See *Fortune*, 637 F. Supp. 2d at 143 (E.D.N.Y. 2009) *aff'd* 2010 WL 3393758; *Mugan,* 2011 WL 291851, at *11.

70. Objects on the grounds that this Statement fails to cite to any admissible evidence and is incomplete. To the extent any response is required, Hartford denies the Statement.

Dated: New York, New York
May 18, 2011

Respectfully Submitted,

s/_____
MICHAEL H. BERNSTEIN (MB 0579)
JOHN T. SEYBERT (JS 5014)
DANIEL M. MEIER (DM 2833)
SEDGWICK, LLP
125 Broad Street, 39th Floor
New York, New York 10004-2400
Telephone: (212) 422-0202
Facsimile: (212) 422-0925
(SDMA File No. 02489-000082)
**Attorneys for Defendant**
HARTFORD LIFE INSURANCE COMPANY

To: Scott M. Riemer, Esq.
RIEMER & ASSOCIATES LLC
60 East 42nd Street, Suite 1750
New York, New York 10165
Telephone: (212) 297-0700
*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

I, DANIEL M. MEIER, hereby certify and affirm that a true and correct copy of the attached **DEFENDANT'S COUNTER STATEMENT TO PLAINTIFF'S RULE 56.1 STATEMENT** was served **via ECF and Regular Mail** on May 18, 2011, upon the following:

Scott M. Riemer, Esq.
RIEMER & ASSOCIATES LLC
60 East 42nd Street, Suite 1750
New York, New York 10165
Tel.:  (212) 297-0700

Dated:  New York, New York
         May 18, 2011

s/<br>DANIEL M. MEIER (DM 2833)