Scott M. Riemer (SR 5005)
RIEMER & ASSOCIATES LLC
60 East 42nd Street, Suite 1750
New York, New York 10165
(212) 297-0700
sriemer@riemerlawfirm.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
KAREN BARRETT,                                    10 CV 4600 (AKH)(MHD)

                Plaintiff,

        -against-

HARTFORD LIFE AND ACCIDENT INSURANCE
COMPANY,

                Defendant.
----------------------------------------------------------------X

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO STRIKE EXHIBITS "C" THROUGH "H"
TO THE AFFIRMATION OF SCOTT M. RIEMER
DATED MAY 17, 2011**

Of Counsel:

Scott M. Riemer

PRELIMINARY STATEMENT

Although cross-motions for summary judgment were fully briefed on May 18, 2011, Hartford makes an eleventh-hour motion to strike Barrett's Exhibits C through H. This motion should be denied in its entirety.

**EXHIBITS TO THE AFFIRMATION OF SCOTT M. RIEMER**

| EXHIBIT | DESCRIPTION |
|---------|-------------|
| C | Barrett's Notice of Claim submitted to Hartford on March 24, 2009, Hartford's March 27, 2009 response, and Barrett's April 2, 2009 reply. |
| D | Preface to "The Medical Disability Advisor," written by Presley Reed, M.D. A published presentation of Dr. Reed to Institute of Ideas Conference on February 12, 2005. |
| E | Hartford's Organizational Chart dated January 27, 2009 produced by Hartford in *Jacoby v. Hartford Life and Accident Ins. Co.*, 07 CV 4627 (LAK)(RLE).[1] |
| F | Employee Performance Appraisals produced by Hartford in *Jacoby*. |
| G | Correspondence from March 2009 between Barrett and Greystone, the parent company of her employer (MI Post). |
| H | Description of Hartford's Business Performance Award (BPA) and Individual Performance Award (IPA) produced by Hartford in *Jacoby*. |

Hartford argues that the Court should not consider Exhibits "C" through "H" because: (1) Exhibits "C", "D" and "G" are not part of the administrative record; and (2) Exhibits "C" through "H" were not disclosed pursuant to Fed. R. Civ. P. 26(a). Both arguments fail.

First, contrary to Hartford's assertion, Exhibits "C", "D", and "G" are <u>part</u> of the administrative record. Hartford cannot unilaterally limit the scope of the administrative record by merely ignoring documents it had in its possession or had an opportunity to address. Incredibly, Hartford seeks to blame Barrett for its own suspicious failure to produce Exhibit C as part of the administrative record. It is not hard to realize why Exhibit C is so problematic for Hartford; it takes the wind out of Hartford's specious argument that Barrett never stopped

---

[1] Hartford asserts that the organizational charts produced in *Jacoby* are "confidential." Though Exhibit "E" is stamped "confidential", the document was provided to the undersigned counsel without a confidentiality agreement.

working.   Barrett gave notice to both Hartford and Greystone on March 24, 2009, that she stopped working on March 17.

Second, even if *arguendo*, Exhibits "C", "D" and "G" were not part of the administrative record (which Barrett does not concede), Hartford overlooked that the Court has discretion to consider evidence outside the administrative record upon a showing of "good cause."

Third, even if a party fails to disclose pursuant to Rule 26(a) (which Barrett does not concede), Rule 37(c) permits a party to use at trial or in a motion, the documents, information or witnesses, if the party had "'substantial justification' or the failure was harmless."

Here, Barrett demonstrates that there is good cause for the Court to consider Exhibits "C", "D" and "G" because:  (1) Hartford's conflict of interest is at issue; and (2) Hartford denied Barrett a full and fair review as mandated by ERISA.  Furthermore, pursuant to Rule 37(c), the Court may consider Exhibits "C" through "H" because the failure to disclose was harmless.

Therefore, the Court should deny Hartford's motion to strike Exhibits "C" through "H" to the Affirmation of Scott M. Riemer.

<u>ARGUMENT</u>

I.   EXHIBITS "C", "D" AND "G" ARE UNQUESTIONABLY PART OF
     <u>THE ADMINISTRATIVE RECORD</u>

The administrative record "consists of relevant information made available to the administrator prior to the complainant's filing of a lawsuit and in a manner that gives the administrator a fair opportunity to consider it." *See, e.g., Medoy v. Warnaco Emples. Long Term Disability Ins. Plan*, 581 F. Supp.2d 403, 408 (E.D.N.Y. 2008), *citing, Vega v. Nat'l Life Ins. Servs.*, 188 F.3d 287, 300 (5th Cir. 1999).

Here, Exhibits "C" is <u>part</u> of the administrative record.  Barrett submitted Exhibit "C" to Hartford, which consists of a series of correspondence between Barrett and Hartford on March 24, 2009, March 27, 2009 and April 2, 2009, over <u>1 year</u> prior to filing of the instant lawsuit. (Ex. 1, Exhibits to Complaint filed on 6/14/10).  These documents were in Hartford's possession, but inexplicably omitted from the administrative record compiled by Hartford.  Hartford resorts to shifting the blame on Barrett by arguing that she "failed to assert that [the claim file] was incomplete."   Hartford, however, does not deny its receipt of Exhibit "C" and fails to explain why this crucial correspondence was omitted from the claim file.

Exhibit "D" is incorporated by reference in the administrative record because it is cited as authority in the peer report of Dr. Philip Adamo, dated March 5, 2010 (152), which is in the administrative record and used by Hartford as a basis for denying Barrett benefits.  (78-82). Hartford had the opportunity to investigate the authority its own peer reviewer relied upon— however, it chose not to do so.

Exhibit "G", which consists of a series of correspondence between Barrett and Greystone throughout March 2009, is incorporated by reference in the administrative record because such correspondence is referenced in the April 28, 2009 letter from Greystone to Hartford in the

administrative record.   (463-64).   In such letter, Greystone specifically acknowledged and advised Hartford of its receipt of Exhibit "G."   (*Id.*)   Barrett should not be penalized for Hartford's failure to investigate information it already possessed.

Therefore, Exhibits "C", "D", and "G" are unquestionably part of the administrative record because Hartford was given a "fair opportunity to consider it."

II.    EVEN IF *ARGUENDO*, EXHIBITS "C", "D" AND "G" WERE NOT PART OF THE ADMINISTRATIVE RECORD, THE COURT MAY CONSIDER THE EVIDENCE

Under the arbitrary and capricious standard, the district court's review is <u>ordinarily</u> limited to the administrative record.   *Miller v. United Welfare Fund*, 72 F.3d 1066, 1071 (2d Cir. 1995).   Contrary to Hartford's assertion, the decision whether to admit additional evidence, where, as here, the plan administrator is conflicted (*i.e.*, Hartford was both the plan administrator and insurer), is within the discretion of the district court.   *DeFelice v. Am. Int'l Life Assurance Co.*, 112 F.3d 61, 66 (2d Cir. 1997).   Nonetheless, the presumption is that judicial review "is limited to the record in front of the claims administrator <u>unless</u> the district court finds good cause to consider additional evidence."   *Id.* at 67 (emphasis added).   *Cook v. N.Y. Times Co. Long Term Disability Plan*, 2004 U.S. Dist. LEXIS 1259, *60-61 (S.D.N.Y. Jan. 30, 2004)(Lynch, J.), *citing DeFelice,* 112 F.3d at 66 (explaining that "plaintiffs are utterly helpless against the whim of the conflicted body's interpretation of the facts").

Here, there is good cause to consider Exhibits C, D and G.

A.    BARRETT DEMONSTRATES GOOD CAUSE TO CONSIDER EXHIBITS "C", "D" AND "G"

1.    Hartford's Conflict Of Interest Is At Issue

There is good cause to consider Exhibits "C", "D" and "G" because Hartford's conflict of interest is at issue.

4

First, Barrett submitted Exhibits "C" and "G" to rebut Hartford's revival of a previously conceded argument from its initial denial letter, demonstrating that Hartford's "moving of the target" raised questions as to its motivations.  Instead of specifying all reasons for denial in its initial denial letter, Hartford strategically decided to attack Barrett's claim only on "lack of coverage"—Hartford never asserted "lack of disability" as a basis for denial.  In its appeal denial letter, Hartford *sub silentio* abandoned its "lack of coverage" defense after Barrett submitted compelling evidence of "coverage" on appeal by denying Barrett's claim only on "lack of disability" ground without providing her the opportunity to cure the newly alleged deficiencies. Instead of deciding Barrett's claim in a manner designed to provide her with a full and fair review, Hartford decided to deny Barrett's claim in a manner that was least costly administratively to Hartford.  Here, Exhibits "C" and "G" corroborated the evidence Barrett submitted on appeal addressing the issue of "lack of coverage", confirming that Barrett notified her employer and Hartford of her March 18, 2009 disability date long before the termination of coverage on April 7, 2009, and that she did not work on and after March 18, 2009.

Second, Barrett submitted Exhibit "D" because it attacks the credibility of Dr. Philip Adamo of UDC, the peer reviewer Hartford relied on to uphold the denial of Barrett's benefits, which is directly relevant to Hartford's conflict of interest.  *See, e.g., Cook*, 2004 U.S. Dist. LEXIS 1259 at *61 (admitting evidence that "is relevant to the credibility of the sole evidence in the record that contravenes the nearly unanimous findings of her treating physicians").  Here, Exhibit "D" demonstrates that Dr. Adamo's peer review report was premised on authority that was clearly prejudiced against MCS and RAD.

2.      Hartford Denied Barrett A Full And Fair Review

Barrett's showing of good cause to consider Exhibits "C", "D", and "G" is further supported by Hartford's denial of a full and fair review as mandated by ERISA.  *Locher v. UNUM Life Ins. Co. of Am.*, 389 F.3d 288, 295-96 (2d Cir. 2004)(holding that in *DeFelice* "'good cause' existed not merely because the claims reviewer and claims payor were the same entity, but also because the procedures employed in arriving at the claim determination were flawed."); *Juliano v. Health Maint. Org. of N.J.*, 221 F.3d 279, 289 (2d Cir. 2000)(holding that the district court acted well within its discretion in admitting additional evidence where an insurer's claimed reason for denying a claim was not stated in its notices to the claimant).

Here, Hartford failed to comply with ERISA's full and fair review mandate issued by the Department of Labor in 29 CF.R. §2560.503-1:

- Hartford improperly stages its defenses.  Instead of specifying all of its reasons for denial in its initial denial letter, Hartford specified its "lack of disability" reason for denial <u>only</u> in the final appeal denial.

- Hartford failed to correct the deficiencies in its initial denial letter even though Barrett provided Hartford <u>two</u> opportunities to do so.

- Hartford failed to provide Barrett the opportunity to address Hartford's "lack of disability" reason for denial, indicating that the appeal process was over.

Therefore, the Court should consider Exhibits "C", "D" and "G" because Barrett not only demonstrated that Hartford's conflict of interest was at issue, but that she was also denied a full and fair review as mandated by ERISA.

III.    EXHIBITS "C" THROUGH "H" ARE ADMISSIBLE PURSUANT TO
        FED. R. CIV. P. 37(C)

Hartford asserts that it was "sandbag[ed]" by Barrett's alleged failure to disclose Exhibits "C" through "H" pursuant to Fed. R. Civ. P. 26(a).  Contrary to its assertion, a review of Exhibits

"C" through "H" demonstrates that Hartford should not have been taken by complete surprise by Barrett's submission of these Exhibits.

First, Exhibit "C" is a series of correspondence between Barrett and Hartford over <u>1 year</u> prior to the filing of the instant lawsuit.  Barrett disclosed "[c]orrespondence with Hartford" as a category of relevant documents in her initial disclosure statement, which clearly includes Exhibit "C".  (Bernstein Dec. dated 6/21/11, Ex. F).

Second, Exhibit "D" was cited as supporting authority by Dr. Philip Adamo in his peer review report, which Hartford used as a basis for denying Barrett benefits.  Had Hartford taken the opportunity to investigate the authority relied on by its own peer reviewer, even a cursory review would have revealed that the cited authority was biased against MCS and RAD.

Third, Barrett does not dispute that Hartford provided copies of organizational charts for 2008 through 2009.  Hartford, however, clearly did not provide Barrett with a complete set of its organizational charts as represented because Exhibit "E" is dated January 27, 2009, which is within the date range requested in her Request for Production of Documents, No. 20.  (Ex. 2, p. 6).  Hartford asserts that Exhibit "E" is irrelevant to the instant case because it is "outdated"— however, Exhibit "E" is dated January 27, 2009, which corresponds directly to the time period at issue.

Fourth, Hartford had possession of Exhibits "F" and "H"—the pertinent pages of these Exhibits were provided with the complaint.  (Ex. 1, pp. 32-33, 39, 41-44).  Hartford asserts that Exhibits "F" and "H" are irrelevant to the instant case because "there is no evidence in the administrative record concerning Barrett's claim that an RCCM assisted Barrett with her return to work."  (Motion to Strike, p. 9).  While Barrett recognizes that an RCCM was not involved with her claim, RCCMs are part of the claims team at Hartford, like the Ability Analyst and

Appeals Specialist who were involved with reviewing Barrett's claim benefits.  Exhibits "F" and "H" is relevant to illuminating Hartford's conflict of interest because at Hartford, members of the claims team, are intricately involved in trying to reduce Hartford's costs.  Here, whether the Ability Analyst and/or Appeal Specialist, like RCCMs, had an incentive to recommend a denial is directly relevant to Hartford's conflict of interest.

Hartford further asserts that Barrett's reliance on documents (Exhibits "E", "F" and "H") from *Jacoby v. Hartford Life and Accident Insurance Co.*, 07 CV 4627 (LAK)(RLE), does not support her conflict arguments.[2]  In doing so, Hartford relies on the Second Circuit's ruling that "[n]o weight is given to a conflict in the absence of any evidence that the conflict actually affected the administrator's decision."  *Durakovic v. Building Service 32 BJ Pension Fund*, 609 F.3d 133, 139 (2d Cir. 2010)(*citing Hobson v. Metropolitan Life Ins. Co.*, 574 F.3d 75, 83 (2d

---

[2] Hartford asserts that the submission of the self-serving declarations from its own employees (Luddy Dec.; Wallis Dec.) "prove that Hartford took steps in [Barrett's] case to reduce the influence of conflict of interest."  (Motion to Strike, p. 8).  In doing so, Hartford re-highlights the cases it cites to in its Memorandum In Support of Summary Judgment.  (Hartford SJ Br., pp. 31-32).  Barrett previously briefed why Hartford's reliance on *Bendik v. Hartford Life Ins. Co.*, 2010 U.S. Dist. LEXIS 70978 (S.D.N.Y.  Jul. 12, 2010) and *Fortune v. Group Long Term Disability Plan for Employees of Keyspan Corp.*, 637 F. Supp. 2d 132 (E.D.N.Y. 2009), *aff'd*, 2010 U.S. App. LEXIS 18195 (2d Cir. Aug. 30, 2010) are misplaced—yet this argument is repeated in the instant motion.  (Barrett Opp. Br., p. 22).   Hartford's reliance on *Schnur v. CTC Comm. Corp. Group Disability Plan*, 2011 U.S. App. LEXIS 5088 (2d Cir. 2011), is also misplaced because it is distinguishable from the instant case.  In *Schnur*, the Second Circuit determined that the plaintiff "did not dispute" that the administrator took active steps to reduce potential bias.  *Id.* at *6-7.  Hartford also asserts that Barrett contradicts herself by string citing cases to demonstrate that conflict should be given greater weight after arguing that such practice is a "particularly perilous way to make a finding."  (Motion to Strike, p. 9).   Barrett, however, referred to these cases to counter the cases string cited by Hartford and to demonstrate that for each case Hartford cites to where the Court did not find conflict of interest to be of great importance, Barrett can cite to another where conflict was of great importance.

Cir. 2009)).  This argument, which was previously raised by Hartford, has been fully briefed by Barrett.  (Barrett Opp. Br., p. 16-19).[3]

Fifth, Exhibit "G" merely corroborated the evidence Barrett submitted on appeal addressing the issue of "lack of coverage."  Exhibit "G" did not offer new information that was not already in the record.

Furthermore, Hartford asserts that the Court should not consider Exhibits "C" through "H" because Barrett failed to disclose these Exhibits in her initial disclosure statement pursuant to Fed. R. Civ. P. 26(a).  (Bernstein Dec. dated 6/21/11, Ex. F).  Even if Barrett failed to disclose pursuant to Rule 26(a), Rule 37(c) permits a party to use at trial or in a motion the documents, information or witnesses, if the party had "'substantial justification' or the failure was harmless."  Here, Rule 37(c) supports the admissibility of Exhibits "C" through 'H" because Hartford failed to prove that the failure to disclose was harmful.

---

[3] Hartford also cites to district court cases in asserting that Hartford took active steps in Barrett's case to reduce the influence of conflict of interest in its Memorandum In Support for Summary Judgment.  (Hartford SJ Br., pp. 31-32).  The same argument why Hartford's reliance on *Bendik* and *Fortune* was misplaced is also applicable to these district court cases because the district court incorrectly assessed conflict of interest by determining whether conflict "actually affected" the administrator's decision.

<u>CONCLUSION</u>

For the foregoing reasons, this Court should deny Hartford's motion to strike Exhibits

"C" through "H" to the Affirmation of Scott M. Riemer.

Dated: New York, New York
      June 28, 2011

                            Respectfully submitted,


                        _/s/ Scott M. Riemer_____
                        Scott M. Riemer (SR 5005)
                        RIEMER & ASSOCIATES, LLC
                        60 East 42nd Street, Suite 1750
                        New York, New York 10165
                        (212) 297-0700
                        sriemer@riemerlawfirm.com

<u>CERTIFICATE OF SERVICE</u>

      **I HEREBY CERTIFY** that on June 28, 2011 I served a true and complete copy of the foregoing Memorandum of Law in opposition to Hartford's Motion to Strike by transmitting the same by electronic mail to the following individuals at the e-mail addresses indicated:

Michael H. Bernstein
Sedgwick LLP
125 Broad Street, 39th Floor
New York, New York 10004-2400
Tel.: (212) 422-0202
Fax: (212) 422-0925

I also certify that this document filed through the ECF system will be sent electronically to all registered participants on June 28, 2011.

Dated: New York, New York
      June 28, 2011

                            <u>/s/Scott M. Riemer</u>
                            Scott M. Riemer (SR 5005)
                            RIEMER & ASSOCIATES LLC
                            60 East 42nd Street, Suite 1750
                            New York, New York  10165
                            (212) 297-0700
                            sriemer@riemerlawfirm.com