Scott M. Riemer (SR 5005)
RIEMER & ASSOCIATES LLC
60 East 42nd Street, Suite 1750
New York, New York 10165
(212) 297-0700
sriemer@riemerlawfirm.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
KAREN BARRETT,                                              10 CV 4600 (AKH)

                Plaintiff,

       -against-

HARTFORD LIFE AND ACCIDENT INSURANCE
COMPANY,

              Defendant.
---------------------------------------------------------------X

### PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF AN AWARD OF ATTORNEYS' FEES AND PREJUDGMENT INTEREST

Of Counsel:

Scott M. Riemer
Sharon H. Lee

<u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................................................ iii

PRELIMINARY STATEMENT ...................................................................................... 1

ARGUMENT ..................................................................................................................... 2

I.      ATTORNEYS' FEES SHOULD BE AWARDED TO BARRETT .................................... 2

        A.     THE ATTORNEYS' FEES INCURRED DURING THE COURT
              ORDERED REMAND SHOULD BE AWARDED ........................................... 2

             1.    Attorney Fees Expended During A Court Ordered Remand
                   May Be Awarded By The Court ..................................................... 3

             2.    The Requested Fees Should Be Awarded Under *Hardt*, But
                   Even If This Court Were To Apply The *Chambless* Factors,
                   Each *Chambless* Factor Favors Barrett ...................................... 4

                 i.    Hartford Engaged In Culpable Conduct ........................... 5

                 ii.   Hartford Has The Ability To Satisfy An Award Of
                     Attorneys' Fees ................................................................. 7

                 iii.  An Award Of Attorneys' Fees Would Deter Other Persons
                     From Acting Similarly Under Like Circumstances ........... 7

                 iv.  The Merits Favor Barrett ................................................... 8

                 v.   The Action Conferred A Common Benefit ....................... 8

         B.     THE REMAINING PORTION OF THE ATTORNEYS' FEES
              INCURRED BY BARRETT TO OBTAIN THE COURT ORDERED
              REMAND SHOULD NOW BE AWARDED ............................................... 9

II.     THE FEES REQUESTED ARE REASONABLE ............................................................... 10

        A.     THE DOCUMENTS SUBMITTED IN SUPPORT OF BARRETT'S
              FEE REQUEST ARE ADMISSIBLE ........................................................ 10

         B.     THE HOURLY RATES REQUESTED ARE REASONABLE ........................... 11

         C.     THE NUMBER OF HOURS REQUESTED IS REASONABLE ........................ 13

i

III.    THE COURT SHOULD AWARD $25,975.00 IN PREJUDGMENT
        INTEREST ................................................................................................................ 15

        A.      BARRETT IS ENTITLED TO PREJUDGMENT INTEREST
                UNDER ERISA ............................................................................................. 15

        B.      AN AWARD OF PREJUDGMENT INTEREST AT THE 9%
                NEW YORK STATUTORY RATE IS APPROPRIATE ....................................... 17

CONCLUSION ................................................................................................................. 18

TABLE OF AUTHORITIES

*Alfano v. CIGNA Life Ins. Co.*, 2009 U.S. Dist. LEXIS 28118 (S.D.N.Y. Apr. 2, 2009) ........................... 12, 17-18

*Chambless v. Masters, Mates & Pilots Pension Plan,* 815 F.2d 869 (2d Cir. 1987) ............................................ 4-9

*Clark v. First Unum Life Ins. Co.*, 2009 U.S. Dist. LEXIS 36054 (S.D.N.Y. Apr. 28, 2009) ...................... 9, 12-13

*Cohen v. Metropolitan Life Ins. Co.*, 2007 U.S. Dist. LEXIS 86099 (S.D.N.Y. Nov. 21, 2007) ................... 8

*Cook v. N.Y. Times Co. Group,* 2004 U.S. Dist. LEXIS 8306 (S.D.N.Y. Apr. 13, 2004) ............................. 13-14

*Cruz v. Local Union No. 3, Int'l Bhd. of Elec. Workers*, 34 F.3d 1148 (2d Cir. 1994)...................................... 10

*Dunnigan v. Metropolitan Life Ins. Co.*, 277 F.3d 223 (2d Cir. 2002) ..................................................... 15

*Gierlinger v. Gleason*, 160 F.3d 858 (2d Cir. 1998) ........................................................................... 16

*Hardt v. Reliance Standard Life Ins. Co.*, 130 S.Ct. 2149 (2010) ......................................................... 3-5

*In re Livent, Inc.*, 360 F. Supp. 2d 568 (S.D.N.Y. 2005) ..................................................................... 17

*Jones v. UNUM Life Ins. Co. of Am.*, 223 F.3d 130 (2d Cir. 2009) ...................................................... 15-16

*Juliano v. Health Maintenance Org. of N.J., Inc.*, 2001 U.S. Dist. LEXIS 17140
(S.D.N.Y. Sep. 24, 2001)....................................................................................................... 13

*Levitian v. Sun Life and Health Ins. Co. (U.S.)*, 2012 U.S. App. LEXIS 12340 (2d Cir. June 2010)
(summary order)................................................................................................................. 4

*Local Union No. 97, IBEW v. NRG Energy, Inc.*, 2009 U.S. Dist. LEXIS 39423
(N.D.N.Y. May 8, 2009)......................................................................................................... 18

*Locher v. UNUM Life Ins. Co. of America*, 389 F.3d 288 (2d Cir. 2004)......................................... 6, 8-9

*Mendez v. TIAA-CREF*, 982 F.2d 783 (2d Cir. 1992) ..................................................................... 5

*Miller v. United Welfare Fund*, 72 F.3d 1066 (2d Cir. 1995) ........................................................... 5

*Morgenthaler v. First Unum Life Ins. Co.*, 2006 U.S. Dist. LEXIS 62688
(S.D.N.Y. Aug. 22, 2006)..................................................................................................... 17

*New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136 (2d Cir. 1983) ................. 10

*Nicol v. Peking Handicraft, Inc.*, 2008 U.S. Dist. LEXIS 82085 (S.D.N.Y. Oct. 17, 2008).................... 14

*Paese v. Hartford Life and Accident Ins. Co.*, 449 F.3d 435 (2d Cir. 2006)....................................... 6, 8

*Palmiotti v. Metropolitan Life Ins. Co.*, 2006 U.S. Dist. LEXIS 37490 (S.D.N.Y. June 9, 2006)................... 13-14

*Peterson v. Continental Casualty Co.*, 282 F.3d 112 (2d Cir. 2002) ..................................................... 3-4

*Service Employees Int'l Union, Local 32BJ, AFL-CIO v. Stone Park Assocs., LLC*,
326 F. Supp. 2d 550 (S.D.N.Y. 2004) ........................................................................................ 18

*Sharkey v. Lasmo (AUL Ltd.)*, 214 F.3d 371 (2d Cir. 2000)............................................................ 16

*Sheehan v. Metropolitan Life Ins. Co.*, 42005 U.S. Dist. LEXIS 7728 (S.D.N.Y. Apr. 29, 2005) ................. 17

*Slupinski v. First Unum Life Ins. Co.*, 554 F.3d 38 (2d Cir. 2009)............................................... 15-16

*Taaffe v. Life Ins. Co. of N. Am.*, 769 F. Supp. 2d 530 (S.D.N.Y. 2011) ...................................... 4, 13-15, 17

*Toussaint v. JJ Weiser, Inc.*, 648 F.3d 108 (2d Cir. 2011)(*per curiam*) ............................................ 5

*Veltri v. Building Service 32B-J Pension Fund*, 2004 U.S. Dist. LEXIS 6834
(S.D.N.Y. Apr. 19, 2004) ........................................................................................................ 7-8

*Winkler v. Metropolitan Life Ins. Co.*, 2006 U.S. Dist. LEXIS 56464 (S.D.N.Y. Aug. 10, 2006) ................. 13-14

## FEDERAL STATUTES AND REGULATIONS

ERISA § 502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B) .............................................................. 17

ERISA § 502(g)(1), 29 U.S.C. §1132(g)(1)............................................................... 4-5, 18

## RULES

FED. R. CIV. P. 54(d)(2) ................................................................................................ 1-2

FED. R. CIV. P. 60(b)(5) ............................................................................................ 1-2, 9-10

Local Rule 6.3 ............................................................................................................. 2

N.Y. Civil Practice Law and Rules ("CPLR") §5004................................................................ 17

PRELIMINARY STATEMENT

Barrett respectfully requests that the Court grant Barrett's application for:  (A) $108,831.72

($52,073.88 + $56,757.84) in attorneys' fees; and (B) $25,975.00, in prejudgment interest at the rate

of 9% (the New York State statutory rate), on the $184,492.23 in back benefits that Hartford owed

Barrett.

Barrett's application consists of two distinct categories of attorneys' fees.  First, Barrett seeks

$52,073.88[1] of the fees incurred during the Court ordered remand and preparation of the instant

motion.  This is an entirely new request for attorneys' fees pursuant to FED. R. CIV. P. 54(d)(2) for

services provided after the Court's remand (see Ex. 4) to Hartford for further consideration and the

preparation of the instant motion.  In its opposition, Hartford completely fails to address the merits

of awarding this category of fees.  Second, Barrett seeks $56,757.84 in fees.  These fees are the fees

that the Court did not award in its order dated August 5, 2011 (Ex. 5), which awarded only 40% of

the $94,596.40 requested because of Barrett's partial victory at that time.  These fees are requested

under FED. R. CIV. P. 60(b)(5) because continued application of the 8/5/11 Fee Order is no longer

equitable in light of Barrett's complete victory during the Court ordered remand on July 12, 2012

(Ex. 10).

Barrett also seeks $25,975.00, in prejudgment interest at the rate of 9% (the New York State

statutory rate), on the $184,492.23 in back benefits that Hartford owed Barrett.

---

[1] Please note that Barrett has increased her request for attorneys' fees from $37,513.00 to $52,073.88 to reflect $14,560.88 in legal fees incurred since September 14, 2012, in preparation of her reply papers.  See Reply Affirmation of Scott M. Riemer dated October 26, 2012 ("Riemer Reply Aff."), Ex. 15.  Notably, this figure represents a voluntary reduction of 10% to account for any alleged inefficiency or redundancy.  The actual fees incurred were $16,178.75.  Significant legal time was required in responding to Hartford's 32-page opposition brief.

<u>ARGUMENT</u>

I.   <u>ATTORNEYS' FEES SHOULD BE AWARDED TO BARRETT</u>

The instant application is for two distinct categories of attorneys' fees:  (A) $52,073.88—the fees incurred <u>during</u> the Court ordered remand and preparation of the instant motion pursuant to FED. R. CIV. P. 54(d)(2); and (B) $56,757.84—the remaining fees incurred <u>prior</u> to the Court order remand, which the Court did <u>not</u> award in its order dated August 5, 2011 (Ex. 5).

In its opposition, Hartford groups these categories together and asserts that Barrett's application is an untimely "motion for reconsideration."  (Hartford at 7).  Hartford asserts that pursuant to the 14-day deadline under Local Rule 6.3, Barrett "had until August 19, 2011 to file a motion for reconsideration seeking the additional fees she seeks now if she believed this Court denied them in error on her first motion for attorneys' fees."  (*Id.*).

Hartford's argument under Local Rule 6.3, however, is inapplicable to <u>either</u> category of fees requested by Barrett.  First, the request for $52,073.88 under FED. R. CIV. P. 54(d)(2) does not in any way pertain to the 8/5/11 Fee Order.  The request only seeks time expended on the case <u>after</u> the order (*i.e.*, the time expended during the Court ordered remand and in drafting this motion).  Second, the request for $56,757.84 under FED. R. CIV. P. 60(b)(5) could not be made by August 19, 2011, as asserted by Hartford, because Hartford did not grant benefits in the Court ordered remand until one year later on July 12, 2012.

A.   THE ATTORNEYS' FEES INCURRED DURING THE COURT ORDERED REMAND SHOULD BE AWARDED

Barrett seeks $52,073.88 of the attorneys' fees incurred during the Court ordered remand and preparation of the instant motion.

2

1.   Attorney Fees Expended During A Court Ordered Remand May Be Awarded By The Court

*Peterson v. Continental Casualty Co.*, 282 F.3d 112, 122 (2d Cir. 2002) permits the award of attorney fees for legal work performed during a Court ordered remand.   The Second Circuit explains:

> [W]e see no reason that a party may not recover costs incurred during an administrative remand ordered by a court.  As demonstrated above, the text and legislative history indicate that once a court of law has assumed jurisdiction over a suit, all costs incurred may be shifted by a court to one party.  The fact that a court orders additional fact finding or proceedings to occur at the administrative level does not alter the fact that those proceedings are part of the "action" as defined by ERISA.

*Id.*

Here, as in *Peterson*, the Court ordered a remand back to Hartford for additional fact finding and retained jurisdiction of the instant action.   (Ex. 4).   The remand resulted in the award of $184,492.23 in back benefits and put Barrett on benefit for as long as she remained disabled.  (Ex. 10).  Therefore, as a result of the lawsuit, including the Court ordered remand, Barrett received all of the benefits she sought in her complaint.  She became fully successful in her claim.

In opposition, Hartford denies Barrett's complete success by asserting that it somehow does not count because it was the result of a court ordered remand.  Hartford asserts that the Court should focus "on the outcome of the '*litigation,*' not the outcome of a subsequent review on remand" in assessing whether the claimant satisfied the requirement of "some success on the merits." (Hartford at 8-9).  This argument, however, is unavailing.  First, the assertion that a court ordered remand is not part of the "litigation" and therefore inapplicable when awarding attorney fees is directly contrary to the holding in *Peterson*.  *Peterson* specifically held that a remand is "part of the 'action' as defined by ERISA."  282 F.3d at 122.  Second, in *Hardt v. Reliance Standard Life Ins. Co.*, 130 S.Ct. 2149 (2010), the Supreme Court affirmed the award of attorney fees following a successful Court ordered remand.  In so doing, the Court focused on two facts: the plaintiff obtained a court

3

ordered remand; and the insurance company reversed its earlier denial in the remand.  The Court

then held:

> These facts establish that Hardt has achieved far more than 'trivial success on the
> merits' or a 'purely procedural victory."  Accordingly, she has achieved 'some success
> on the merits,' and the District Court properly exercised its discretion to award
> Hardt attorney's fees in this case.

*Id.* at 2158-59.

Accordingly, *Peterson* and *Hardt* both justify the award of attorney fees here.  Both cases

consider the result of a remand, which according to *Peterson* is part of the lawsuit, in determining the

degree of success obtained by a plaintiff in the lawsuit.  Indeed, the degree of success obtained here

following the Court ordered remand is identical to the level of success that justified an award of

attorney fees in *Hardt*.  Given the level of success achieved by Barrett, there is no need for this

Court to consider the *Chambless* factors.[2]  *See Taaffe v. Life Ins. Co. of N. Am.*, 769 F. Supp. 2d 530, 542

(S.D.N.Y. 2011)(Maas, M.J.)(determining that the Court need not address the five *Chambless* factors

after finding that plaintiff achieved "some success on the merits"); *Levitian v. Sun Life and Health Ins.*

*Co. (U.S.)*, 2012 U.S. App. LEXIS 12340, *12 (2d Cir. June 19, 2010)(summary order)(determining

that the five-factor *Chambless* test previously mandatory in this Circuit was abrogated by *Hardt*).

> 2.  The Requested Fees Should Be Awarded Under *Hardt*, But Even If This
>     Court Were To Apply The *Chambless* Factors, Each *Chambless* Factor Favors
>     <u>Barrett</u>

Hartford asserts that the *Chambless* factors[3] weigh against an award of the requested fees.

---

[2] In *Hardt*, the Supreme Court called into question the continued validity of the five factors under
*Chambless*:

> Because these five factors bear no obvious relation to §1132(g)(1)'s text or to our
> fee-shifting jurisprudence, they are not required for channeling a court's discretion
> when awarding fees under this section.

130 S.Ct. at 2158.

[3] The five *Chambless* factor are: (1) the degree of the offending party's culpability or bad faith; (2) the
ability of the offending party to satisfy an award of attorney's fees; (3) whether an award of
attorney's fees would deter other persons from acting similarly under like circumstances; (4) the

(Hartford at 10-19).  This argument, however, is nothing more than a repeat of Sections II(A)(1)–(5) in Hartford's 7/19/11 Opposition Brief (Doc. 44 at 6-14), where Hartford devoted nearly 8 pages arguing the applicability of the *Chambless* factors.  Notably, this Court already considered this argument, but nonetheless awarded Barrett partial fees in the 8/5/11 Fee Order utilizing the language from the "some degree of success on the merits" standard in *Hardt*, with no weight given to the *Chambless* factors.

Hartford asserts that *Toussaint v. JJ Weiser, Inc.*, 648 F.3d 108 (2d Cir. 2011)(*per curiam*) stands for the proposition that once a showing of "some success on the merits" is made, "the reviewing court <u>must</u> consider the five '*Chambless* factors' to determine whether an award of fees is appropriate."  (Hartford at 10)(emphasis added).  But, this is incorrect.  The Second Circuit explained that the application of the *Chambless* factors was permissible at the discretion of the reviewing court, but it did not bar a reviewing court from awarding fees simply after finding "some success on the merits:"

> A court may apply—<u>but is not required to apply</u>—the *Chambless* factors in channeling [its] discretion when awarding fees under § 1132(g)(1).  So long as a party has achieved some degree of success on the merits a court in its discretion may allow a reasonable attorney's fee and costs of action to either party.  But it is not required to award fees simply because this pre-condition has been met.

*Id.* at 110 (emphasis added, citations omitted).

Even if *arguendo*, the *Chambless* factors remain relevant despite *Hardt*, fees should be granted to Barrett because all of the factors favor her.

### i.   Hartford Engaged In Culpable Conduct

The culpability requirement of the first *Chambless* factor is satisfied when the plaintiff is

---

relative merits of the parties' positions; and (5) whether the action conferred a common benefit on a group of plan participants. *Miller v. United Welfare Fund*, 72 F.3d 1066, 1074 (2d Cir. 1995) (citing *Chambless v. Masters, Mates & Pilots Pension Plan,* 815 F.2d 869, 872 (2d Cir. 1987)); *Mendez v. TIAA-CREF*, 982 F.2d 783, 788 (2d Cir. 1992).

deprived of a full and fair review.  *See, e.g.*, *Paese v. Hartford Life and Accident Ins. Co.*, 449 F.3d 435, 450 (2d Cir. 2006) ("[I]t was entirely appropriate for the district court to consider the degree to which Hartford failed to engage in a fair and open-minded consideration of Paese's claim."); *Locher v. Unum Life Ins. Co. of Am.*, 389 F.3d 288, 299 (2d Cir. 2004) (failure to adequately investigate a claim and to base a denial on a doctor's report that lacked a scientific analysis of the medical evidence is culpable conduct).

Hartford's conduct was culpable because the Court necessarily made an implicit finding that Hartford failed to provide Barrett with a full and fair review by remanding her claim to Hartford "for further re-review of Barrett's claim."  (Ex. 4, 7/5/11 Remand Order).

Though it was Hartford's responsibility to ensure that Barrett was provided with a full and fair review, Hartford attempts to turn the table by rearguing that Barrett "staged" her submission of proof to Hartford.[4]    (Hartford at 12-13)(Doc. 44 at 9-10).   During the June 20, 2011 Oral Argument, however, the Court rejected Hartford's allegation that it was Barrett who "staged" submission of proof and confirmed that Hartford's determination to terminate Barrett's benefits was made without an understanding of Barrett's disability (*i.e.*, Multiple Chemical Sensitivity (MCS) and Reactive Airway Disease (RAD)).   (Tr. 11:7-12.)("I don't think there's any gaming here, I think there's a need to have a full examination of the event.  This is a very difficult issue here.  There's an imperfect understanding of allergies, it's very hard to identify an allergy, and if it's there it can wreak havoc on a person's life.").   Furthermore, the Court expressed its concern regarding the administration of Barrett's claim.   (*Id.* at 12:9-14.)("The problem here is that the claims were precipitated on the eve of the demise of the insurance, and it looked like at the beginning you were

---

[4] In doing so, Hartford repeatedly refers the Court to the Oral Argument Transcript dated June 20, 2011 ("Tr.") as support, but the transcript cannot be utilized as findings of fact.  Hartford represents that the transcript was filed as Exhibit A to the Declaration of Michael H. Bernstein dated September 28, 2012, but it appears that the declaration was never filed.  The Transcript, however, was previously filed as Exhibit A to the Declaration of Michael H. Bernstein dated August 2, 2011 (Doc. 45).

denying the claim because time ran out.  She was getting paid and working at home.  It's not clear whether she was working at home or having a prolongation of the pay period").

Hartford further asserts that "when Barrett supplied the medical record that had been lacking from her original claim submission, Hartford approved Barrett's claim for benefits." (Hartford at 13-14).   But, this is an inaccurate account of Hartford's initial denial and what transpired during the remand.  As Barrett details in her moving brief, the requests made by Hartford on remand were "not only. . .duplicative of the documents or information that Barrett previously provided, but Hartford never identified the documents or information that was allegedly missing prior to the remand."  (Barrett at 5).  Moreover, Barrett's submissions to Hartford on remand "included documents and information, which were previously provided to Hartford during the claims process and litigation, but were not given adequate consideration."  (*Id.*).  Notably, Hartford does not dispute these facts.

Accordingly, Hartford's conduct satisfies the culpability requirements of the first *Chambless* factor.

    ii.  <u>Hartford Has The Ability To Satisfy An Award Of Attorneys' Fees</u>

Hartford does not dispute that it has the ability to satisfy Barrett's fee request.

    iii.  An Award Of Attorneys' Fees Would Deter Other Persons From Acting <u>Similarly Under Like Circumstances</u>

When weighing this factor, courts may consider the deterrent effect that the fee award would have on not just the particular defendant in the action, but also the effect it would have on all insurers.  *See Veltri v. Building Service 32B-J Pension Fund*, 2004 U.S. Dist. LEXIS 6834, *8 (S.D.N.Y. Apr. 19, 2004).

In the instant case, a substantial fee award would deter Hartford from failing to provide claimants with a full and fair review in the future, and from arbitrarily denying its insureds' claims

for benefits. *Id.* at \*9 ("[A]n award of attorney's fees would provide incentives for a somewhat less cavalier attitude towards member inquiries in the future."); *Locher*, 389 F.3d at 299 (award of fees would deter similarly inappropriate claims evaluation procedures); *Paese*, 2004 U.S. Dist. LEXIS 6040, at \*34 (an award of attorney fees would put insurers "on notice that if they deny benefits to plan participants without engaging in a fair consideration of their claims, they will be subject to an award of attorney's fees and costs").

Without an award of attorneys' fees, there is little downside for Hartford to deprive claimants of full and fair reviews and to arbitrarily deny benefits. Even if a plaintiff were successful in a lawsuit, Hartford would only have to pay the benefits it was required to pay if it had complied with the law in the first place. Thus, awarding Barrett fees will warn plan administrators to be more attentive to its statutory obligation to provide claimants with a full and fair review by ensuring that determinations are based on a thorough review of the claim file.

iv.  The Merits Favor Barrett

Hartford cannot dispute that the merits favor Barrett. Barrett not only achieved "some success on the merits" by having her claim remanded to Hartford, she completely succeeded on remand because Hartford was forced to pay Barrett $184,492.23 in back benefits and to put her on benefits as long as she remained disabled. (See Sections I(A)(1), I(A)(2)(i), *supra*).

v.  The Action Conferred A Common Benefit

The deterrent effect of attorneys' fees in this case would unquestionably confer a clear and common benefit upon other insureds under the Plan. *See Cohen v. Metro. Life Ins. Co.*, 2007 U.S. Dist. LEXIS 86099, \*8 (S.D.N.Y. Nov. 21, 2007)("[A] determination finding fault with an insurer's conduct in an individual action confers a common benefit on a group of plan participants in that the insurer will be deterred from improperly denying benefits under similar circumstances.").

Citing to cases pre-*Cohen*, Hartford argues that "an individual action for an award of benefits

under an ERISA governed LTD benefit plan…would still only confer a benefit on herself; no other

plan participant would benefit from such a ruling."   (Hartford at 18).   Notably, Hartford cites to

*Locher*, which supports that this factor is not dispositive of awarding a fee award.   *See Clark v. First*

*Unum Life Ins.*, 2009 U.S. Dist. LEXIS 36054, at *7 (S.D.N.Y. Apr. 28, 2009)(citing *Locher v. UNUM*

*Life Ins. Co. of America*, 389 F.3d 288, 299 (2d Cir. 2004).

> ### B. THE REMAINING PORTION OF THE ATTORNEYS' FEES INCURRED BY BARRETT TO OBTAIN THE COURT ORDERED <u>REMAND SHOULD NOW BE AWARDED</u>

Barrett requests $56,757.84 in fees, which are the partial fees that the Court did not award in

its 8/5/11 Fee Order (*i.e.*, 60% of the fees incurred by Barrett to obtain the Court ordered remand).

Barrett appropriately submitted her request for relief from the 8/5/11 Fee Order pursuant

to FED. R. CIV. P. 60(b)(5).   Rule 60(b)(5) provides:

> (b)  **Grounds for Relief from a Final Judgment, Order, or Proceeding**.
> On motion and just terms, the court may relieve a party or its legal
> representative from a final judgment, order, or proceeding for the following
> reasons:  [. . .]
>> (5)  the judgment has been satisfied, released or discharged; it is based
>> on an earlier judgment that has been reversed or vacated; <u>or applying
>> it prospectively is no longer equitable</u>; [. . .]

(emphasis added).

Consistent with Rule 60(b)(5), Barrett specifically details in her moving brief that the 8/5/11

Fee Order is <u>no longer equitable</u> because the circumstances of the case materially changed.   (Barrett

at 2, 6).   At the time of the 8/5/11 Order, this Court awarded Barrett 40% of the requested fees

after determining that she only "succeeded to a degree" by obtaining the Court ordered remand.

(Ex. 5).   On remand, however, Barrett <u>completely</u> succeeded—*i.e.*, Hartford was forced to pay

Barrett all of the benefits to which she was entitled ($184,492.23 in back benefits and to put her on

benefits as long as she remained disabled).   (Ex. 10).

9

In its opposition, Hartford makes no argument under Rule 60(b)(5), and, therefore, concedes the point.

## II. THE FEES REQUESTED ARE REASONABLE

In her moving brief, Barrett compiled a chart itemizing the hours expended for each task performed by each timekeeper, which was utilized to calculate the proposed lodestar. (Barrett at 10). She additionally applied a voluntary 10% deduction to the proposed lodestar in order to account for any alleged inefficiencies or redundancies. (Id). Barrett further details that the hourly rates (reflecting the prevailing market rates) and number of hours requested are reasonable. (Id. at 6-10).

Hartford asserts that the fees requested by Barrett are unreasonable. (Hartford at 19-22). But, Hartford's general assertions lack the specificity required to overcome "a strong presumption that the lodestar figure represents a reasonable fee."

### A. THE DOCUMENTS SUBMITTED IN SUPPORT OF BARRETT'S FEE REQUEST ARE ADMISSIBLE

Hartford argues that the documents (Exs. 11 through 13 to Riemer Aff.) submitted in support of Barrett's request for fees are inadmissible. (Hartford at 19). This argument ignores that the submission of timesheets and affidavits is the accepted method of substantiating attorney fees in the courts within the Second Circuit and throughout the country. *See New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983)(the Second Circuit held that a party seeking an award of attorney's fees must support the request with contemporaneous time records that show "for each attorney, the date, the hours expended, and the nature of the work done."); *see also Cruz v. Local Union No. 3, Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1160 (2d Cir. 1994)(the Second Circuit accepted a "typed listing of [attorney's] hours from their computer records," in lieu of contemporaneous records, where the record showed that the attorneys "made contemporaneous entries as the work was completed, and that their billing was based on these contemporaneous

records."). Notably, the undersigned counsel has submitted similar documents in other matters within this District concerning requests for fees, which have subsequently been awarded.[5]

### B. THE HOURLY RATES REQUESTED ARE REASONABLE

Barrett requested the following hourly rates: $600 for Scott M. Riemer; $275 for junior associate Sharon H. Lee; $200 for senior paralegals Kasandra A. Raux (f/k/a Kasandra A. Gonzalez),[6] Audrey Shore Beerman, and Ellen Mayer.

Hartford attacks only the rate for Scott M. Riemer. Hartford makes two assertions, both of which are demonstrably false.

First, Hartford asserts that "neither Mr. Riemer, nor any of the other attorneys who submitted affidavits, have provided any evidence that they have clients who are actually willing to pay them this rate." (Hartford at 22). This is incorrect. Hartford ignores paragraph 39 of the Riemer Affirmation, dated September 24, 2012, which details that Mr. Riemer has over 150[7] current clients who pay the above-described rates. Paragraph 39 provides:

> 39.    The hourly rates charged to all of our current hourly clients (over 150) are: $600 for Scott M. Riemer; $275 for junior associate time; $200 for senior paralegal time; and $180-200 for paralegal time. These rates are never subject to negotiation. The Firm started charging these rates effective July 1, 2010.[8] [. . .]

(emphasis added). In this regard, Riemer & Associates, LLC represented Barrett on an hourly basis during her initial application and appeal. This retainer dated 3/2/09 (See Ex. 14) charged Barrett the then applicable rate of $560 per hour for Scott M. Riemer. Notably, the retainer informs Barrett

---

[5] Hartford's concern that these Exhibits are "untrustworthy" is undermined by the undersigned counsel's sworn statements in his Affirmation dated September 24, 2012, which was submitted with the request for fees and prejudgment interest.
[6] Ms. Raux's rate increased from $180 to $200 effective January 1, 2012.
[7] To date, the number of clients paying the above-described rates have increased to 170.
[8] The $275 rate for junior associates was instituted in November 2010. Prior to the hiring of Ms. Lee in November 2010, the Firm had no junior associates.

that Mr. Riemer's rate will periodically increase.  As of July 1, 2010, that rate increased to $600 per hour.

Second, Hartford asserts that Mr. Riemer has been awarded much lower rates than $600. Hartford states:

> In recent cases, courts have awarded attorneys, including Mr. Reimer, significantly less than the fees claimed in this case.  *See Clark v. First Unum Life Ins. Co.*, … 2009 WL 1150318, at *4 (S.D.N.Y. Aug. 29, 2009) (awarding fees to Mr. Reimer at a rate of $300 per hour); *Alfano v. CIGNA Life Ins. Co. of NY*, … 2009 WL 890626, at *3 (S.D.N.Y. Apr. 2, 2009) (awarding fees at $450 per hour).

(Hartford at 22).  The *Clark* case, however, never held that Mr. Riemer's rate should be $300 per hour.  In fact, the Court in *Clark* awarded Mr. Riemer and his associates the full rate requested at the time (the rate in effect prior to January 1, 2008), $480 per hour for Mr. Riemer and $300 for his associates,[9] finding "[t]hese rates are commensurate with market rates for lawyers with comparable skill and experience in this district . . ." *Clark*, 2009 U.S. Dist. LEXIS 36054 at *10.  Furthermore, neither Mr. Riemer, nor his firm had any involvement in the *Alfano* case.

Hartford also ignores the fact that every court that had the opportunity to consider the reasonableness of the rates requested by Riemer & Associates LLC in similar ERISA actions found the current rates charged by Riemer & Associates at the time of the fee application to be reasonable. The table below details these determinations:

---

[9] These were the rates that Riemer & Associates LLC, charged hourly clients on January 1, 2007. Although the Court decided the case in 2009, the case was briefed at the end of 2007 and the beginning of 2008.

TABLE 1:
SUMMARY OF RATES REQUESTED AND APPROVED
IN SIMILAR ERISA ACTIONS

|  | *Barrett*[10] (2011) | *Taaffe*[11] (2011) | *Zoller*[12] (2009) | *Clark*[13] (2009) | *Winkler*[14] (2006) | *Palmiotti*[15] (2006) | *Cook*[16] (2004) | *Juliano*[17] (2001) |
|---|---|---|---|---|---|---|---|---|
| SMR | $600 | $560 | $560 | $480 | $430 | $340 | $340 | $300 |
| Associate | $275[18] | $340 | $340 | $300 | $280 | $280 | --- | --- |
| Paralegal | $180-200 | $180 | $180 | $150 | $130 | $130 | $100 | --- |

Notably, this Court did not determine that the requested hourly rates were unreasonable in the 8/5/11 Order.

### C.  THE NUMBER OF HOURS REQUESTED IS REASONABLE

Hartford attacks the number of hours requested by Barrett as being "excessive." (Hartford at 19-21).  In doing so, Hartford asserts that the hours are excessive due to alleged "instances of billing for unnecessary work" and "overbilling for work that was completed."  (*Id.* at 20).

Hartford is quick to criticize the global hours spent on some of the work performed on the case, but fails provide the Court with:  (1) specific criticism of any particular time entry; or (2) specific recommendation as to the amount of time that would be reasonable given the tasks performed.

Moreover, the table below provides a comparison of the time expended by Riemer &

---

[10] *Barrett v. Hartford Life and Accident Ins. Co.*, 10 Civ. 4600 (AKH)(Order of 8/5/11)(Doc. 49).

[11] *Taaffe v. Life Ins. Co. of N. Am.*, 769 F. Supp. 2d 530 (S.D.N.Y. 2011)(Maas, M.J.).

[12] *Zoller v. INA Life Ins. Co. of N.Y.*, 06 Civ. 0112 (RJS)(Orders of 7/29/09 and 8/6/09)(Docs. 99, 100).

[13] *Clark v. First UNUM Life Ins. Co.*, 2009 U.S. Dist. LEXIS 36054 (S.D.N.Y. Apr. 29, 2009).

[14] *Winkler v. Metropolitan Life Ins. Co.*, 2006 U.S. Dist. LEXIS 56464 (S.D.N.Y. Aug. 10, 2006).

[15] *Palmiotti v. Metropolitan Life. Ins. Co.*, 2006 U.S. Dist. LEXIS 37490 (S.D.N.Y. June 9, 2006).

[16] *Cook v. N.Y. Times Co. Long-Term Disability Plan*, 2004 U.S. Dist. LEXIS 8306 (S.D.N.Y. Apr. 13, 2004)(Lynch, J.).

[17] *Juliano v. Health Maintenance Org. of N.J., Inc.*, 2001 U.S. Dist. LEXIS 17140 (S.D.N.Y. Sep. 24, 2001).

[18] The $275 rate for junior associates was instituted in November 2010.  Prior to the hiring of Ms. Lee in November 2010, the Firm had no junior associates.

Associates with respect to the parties' cross-motions for summary judgment and fee application, which demonstrates that the requested hours in the instant action are comparable, if not less, than the number of hours previously requested by Riemer & Associates in similar ERISA actions.

TABLE 2:
NUMBER OF ATTORNEYS' HOURS REQUESTED AND AWARDED
IN SIMILAR ERISA ACTIONS

| | Barrett | Levitian[19] | Taaffe | Zoller | Winkler | Palmiotti | Cook |
|---|---|---|---|---|---|---|---|
| **Cross-Motions for SJ** | | | | | | | |
| Requested | 140.95 | 228.2 | --- | 254.25 | 188.2 | 329.0 | 131.8 |
| Voluntary -10% | 126.86 | 205.38 | --- | 228.8 | 169.4 | 296.1 | 118.6 |
| Awarded | --- | --- | --- | 228.8 | 150.6[20] | 296.1 | 118.6 |
| **Fee Application** | | | | | | | |
| Requested | 45.95[21] | --- | --- | 54.15 | 36.35 | 72.1 | 62.85 |
| Voluntary -10% | 41.36 | --- | 48.02 | 48.74 | 32.72 | 64.89 | 56.57 |
| Awarded | --- | --- | 40.82 | 48.74 | 29.08 | 64.89 | 56.57 |
| **Adjustment of Total Award** | | | | | | | |
| | ---[22] | --- | -15% | none | -11.11% | -$10,000 | none |

Hartford also asserts that Barrett engaged in "block billing," without providing specific examples. (Hartford at 20). In doing so, Hartford cites to cases from the Ninth Circuit inferring that block billing mandates an across the board reduction. (Id.). This is incorrect. Block billing is not prohibited in the Second Circuit. *See Nicol v. Peking Handicraft, Inc.*, 2008 U.S. Dist. LEXIS 82085, at *19 (S.D.N.Y. Oct. 17, 2008). Hartford failed to demonstrate that the time entries made by Mr. Riemer and his associates prevent a determination of unnecessary or duplicative work. *Id.* Indeed, the time entries made by Mr. Riemer and his associates are contemporaneously maintained and clearly specify the date, the attorney who performed the work, time expended, hourly rate, and specific service provided. (Exs. 13, 15).

Hartford further dismisses the voluntary 10% reduction of the requested fees (totaling over

---

[19] The application for fees in *Levitian* will be filed on October 31, 2012.
[20] This figure represents -20% from original lodestar.
[21] This figure does not include the hours expended to prepare the post-remand fee brief.
[22] -60%, but this motion is being submitted in light of Barrett's complete success on remand.

$12,000.00) proposed by Barrett without explanation, and only suggests that no fees should be granted, that "the Court would be justified in denying the request outright." (Hartford at 21).

III. THE COURT SHOULD AWARD $25,975.00 IN PREJUDGMENT INTEREST

Barrett seeks $25,975.00 in prejudgment interest at the rate of 9% (the New York State statutory rate), on the $184,492.23 in back benefits that Hartford owed Barrett.

Hartford asserts that there is no judgment upon which an award of prejudgment interest could be calculated because "the Court did not award any sum of money to Barrett." (Hartford at 23-24). Hartford's sole support for this assertion is a single non-ERISA case consisting of facts that are inapplicable to the instant action. The courts within the Second Circuit, however, have authorized an award of prejudgment interest on back benefits in ERISA cases involving LTD claims with or without a judgment. *See, e.g.*, *Dunnigan v. Metropolitan Life Ins. Co.*, 277 F.3d 223, 229 (2d Cir. 2002); *Taaffe*, 769 F. Supp. 2d at 538. Moreover, Hartford overlooks the fact that the Court specifically retained jurisdiction of the case until the outcome of Hartford's reconsideration of Barrett's claim, as discussed in Section I(A)(1), *supra*. As such, Hartford's determination to pay Barrett $184,492.23 in back benefits on remand was made while the Court had jurisdiction of the case.

A. BARRETT IS ENTITLED TO PREJUDGMENT INTEREST UNDER ERISA

The Second Circuit interpreted ERISA "as authorizing the district court to award prejudgment interest to a successful ERISA claimant." *Slupinski v. First Unum Life Ins. Co.*, 554 F.3d 38, 53-54 (2d Cir. 2009)(quoting *Jones v. UNUM Life Ins. Co. of Am.*, 223 F.3d 130, 139 (2d Cir. 2009)). In a successful ERISA case, prejudgment interest is an element of a plaintiff's "complete compensation." *Id.* at 54. Prejudgment interest also may be awarded "to ensure that the defendant not enjoy a windfall as a result of its wrongdoing." *Id.* Hence, the Second Circuit has "consistently stated that '[t]o the extent . . . that the damages awarded to the plaintiff represent compensation for

lost wages, it is ordinarily an abuse of discretion *not* to include pre-judgment interest.'" *Id.* at 54 (quoting *Sharkey v. Lasmo (AUL Ltd.)*, 214 F.3d 371, 375 (2d Cir. 2000)(quoting *Gierlinger v. Gleason*, 160 F.3d 858, 873 (2d Cir. 1998))).

The Second Circuit utilizes the *Jones* factors to determine whether an award of prejudgment interest is appropriate: "(i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court." *Id.* at 55 (quoting *Jones*, 223 F.3d at 139). All of these factors favor Barrett.

First, an award of prejudgment interest to Barrett would fulfill the objectives of ERISA. Barrett's LTD benefits are meant to compensate her for lost wages as a result of her disability. Following the remand, Hartford paid Barrett 100% of those lost wages retroactively from the date Barrett first filed her LTD claim (*i.e.*, $184,492.23 in back benefits). But, Hartford has not agreed to pay Barrett interest on those lost wages for over three years, which was wrongfully withheld from Barrett—*i.e.*, from June 16, 2009 through July 12, 2012. The interest on over three years of her disability benefits is unquestionably an element of Barrett's "complete compensation." To ensure that Hartford does not wrongfully benefit from its use of Barrett's money, and to discourage insurers from attempting to profit from their failure to comply with their ERISA obligations, an award of prejudgment interest should be granted to Barrett. As such, the first and third *Jones* factors favor Barrett.

Second, Barrett has done nothing to suggest that an award of prejudgment interest would be unfair or inequitable. Hartford asserts that Barrett "received compensation from other sources of income while simultaneously seeking disability benefits under the Plan." (Hartford at 29). But, Barrett's employment at a lessened position and significantly reduced salary (reduction of more than 50% of her pre-disability income) is not in violation of the Plan nor did she fail to meet the

definition of disability under the Plan.[23]   Notably, theses earnings were offset from the back benefits awarded to Barrett.

### B.   AN AWARD OF PREJUDGMENT INTEREST AT THE 9% NEW YORK STATUTORY RATE IS APPRIOPRIATE

Hartford asserts that the New York State CPLR §5004 prejudgment interest rate of 9% is preempted by ERISA §§502(a)(1)(B).   (Hartford at 24-28).   In doing so, Hartford refers the Court to decisions from other circuits, but fails to provide any authority from the courts within the Second Circuit that have declined to award prejudgment interest at the 9% New York statutory interest rate.

Indeed, the courts within the Second Circuit have repeatedly awarded prejudgment interest at the 9% New York statutory interest rate because there is no set interest rate dictated by ERISA. *See, e.g., Taaffe*, 769 F. Supp. 2d at 538; *Alfano v. CIGNA Life Ins. Co.*, 2009 U.S. Dist. LEXIS 28118, at *19 (S.D.N.Y. Apr. 2, 2009)(citing *Morgenthaler v. First Unum Life Ins. Co.*, 2006 U.S. Dist. LEXIS 62688, *8 (S.D.N.Y. Aug. 22, 2006)(Hellerstein, J.); *In re Livent, Inc.*, 360 F. Supp. 2d 568, 572-73 (S.D.N.Y. 2005); *Sheehan v. Metropolitan Life Ins. Co.*, 2005 U.S. Dist. LEXIS 7728, at *7 & n.2 (S.D.N.Y. Apr. 29, 2005).   Judge Lynch explains:

> [W]hile there is no applicable federal statute establishing a prejudgment interest rate, New York has adopted a statutory prejudgment interest rate of 9%, N.Y. C.P.L.R. §5004, thus making an objective legislative judgment that 9% is an appropriate rate. Although CIGNA argues that the Treasury rate constitutes a more appropriate rate . . . there is no reason to think that that rate more accurately captures the time value of money in New York, or the true loss to plaintiff, particularly given the New York State Legislature's determination otherwise. Accordingly, plaintiff's request for prejudgment interest at a rate of 9% is granted.

---

[23] The Plan provides:  Disability or Disabled means that during the Elimination Period and for the next 24 months you are prevented. . .from performing one or more of the Essential Duties of Your Occupation, and as a result your Current Monthly Earnings are no more than 80% of your Indexed Pre-disability Earnings.  After that, you must be so prevented from performing one or more of the Essential Duties of Any Occupation."  "Any Occupation means an occupation for which you are qualified by education, training or experience, and that has an earnings potential greater than an amount equal to the lesser of the product of your Indexed Pre-disability Earnings and the Benefit Percentage and the Maximum Monthly Benefit show in the Schedule of Insurance."

*Alfano*, 2009 U.S. Dist. LEXIS 28118, at *19-20; *see also Local Union No. 97, IBEW v. NRG Energy, Inc.*, 2009 U.S. Dist. LEXIS 39423, at *18-19 (N.D.N.Y. May 8, 2009)(quoting *Service Employees Int'l Union, Local 32BJ, AFL-CIO v. Stone Park Assocs., LLC*, 326 F. Supp. 2d 550, 555 (S.D.N.Y. 2004)).

Accordingly, an award of prejudgment interest of $25,975.00[24] at the 9% New York statutory interest rate is entirely appropriate.

<u>CONCLUSION</u>

For the foregoing reasons, Barrett respectfully requests: (1) a total of $108,831.72 in attorneys' fees under ERISA §502(g)(1); and (2) $25,975.00 in prejudgment interest, at the rate of 9% (the New York State statutory rate), on the $184,492.23 in back benefits that Hartford owed Barrett.

Dated: New York, New York
       October 26, 2012

                          RIEMER & ASSOCIATES LLC
                          Attorneys for Plaintiff
                          60 East 42nd Street, Suite 1750
                          New York, New York 10165
                          (212) 297-0700
                          sriemer@riemerlawfirm.com

                          By: <u>/s/ Scott M. Riemer</u>
                              Scott M. Riemer (SR5005)

---

[24]Hartford paid Barrett $184,492.23 in back benefits on July 13, 2012. This represents back benefits for the period from June 16, 2009 through July 31, 2012—a period of 1,141 days, where Hartford wrongfully withheld Barrett's benefits due to Hartford's failure to provide Barrett a full and fair review necessitating a Court ordered remand, as discussed in Section I(A)(2)(i), *supra*. The medium point is 571 days. The daily rate of interest at 9% for $184,492.23 is $45.4912. $45.4912 multiplied by 571 is $25,975.00.

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 26, 2012, I served a true and complete copy of the foregoing document by transmitting the same by electronic mail to the following individuals at the e-mail addresses indicated:

Michael H. Bernstein, Esq.
Sedgwick LLP
225 Liberty Street, 28th Floor
New York, New York 10281
Tel.: (212) 422-0202
Fax: (212) 422-0925
Michael.Bernstein@sedgwicklaw.com

I also certify that this document filed through the ECF system will be sent electronically to all registered participants on October 26, 2012.

Dated:  New York, New York
        October 26, 2012

                                        /s/ Scott M. Riemer
                                        Scott M. Riemer (SR5005)
                                        RIEMER & ASSOCIATES LLC
                                        60 East 42nd Street, Suite 1750
                                        New York, New York 10165
                                        (212) 297-0700
                                        sriemer@riemerlawfirm.com

19